UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **BRANDI N. HALL** | * | **CIVIL ACTION NO.  12-1217** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **CAROLYN COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The District Court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

## Background & Procedural History

On May 28, 2010, Brandi N. Hall filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments.  (Tr. 114-115, 121-124).  She alleged disability as of January 14, 2010, following a car accident that crushed her right ankle.  (Tr. 137, 65).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 55-71).  Thereafter, Hall requested and received a November 1, 2010, hearing before an ALJ.  (Tr. 22-54).  However, in a November 29, 2010, written decision, the ALJ determined that Hall was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 7-18).  Hall petitioned the Appeals Council

to review the unfavorable decision. On March 15, 2012, however, the Appeals Council denied the request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On May 11, 2012, Hall filed the instant complaint for review before this court. She alleges the following errors,

    1.    the ALJ's residual functional capacity assessment is not supported by substantial evidence because a) the ALJ erred in his credibility determination regarding the intensity and limiting effects of Plaintiff's symptoms; and b) it is undermined by new medical evidence; and

    2.    the ALJ's step five determination is not supported by substantial evidence because Plaintiff's testimony and medical evidence show that she cannot perform any jobs that exist in substantial numbers in the economy.[1]

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a

---

[1] The court struck Plaintiff's rely brief because she failed to include a certificate of service. (Dec. 18, 2012, Order [doc. # 11]). Nevertheless, the undersigned has reviewed the memorandum, and is persuaded that it would not affect the outcome herein.

preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite

          duration will not be found disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

      The ALJ determined at step one of the sequential evaluation process that Hall did not engage in substantial gainful activity during the relevant period. (Tr. 12). At step two, he determined that Hall suffers from the "late effects of ankle failure" – a severe impairment. (Tr. 12). He concluded, however, that the impairment(s) was not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 14).

## II. Residual Functional Capacity

The ALJ next determined that Hall retains the residual functional capacity ("RFC") to perform light work,[2] except that she can stand/walk for no more than four hours, and only occasionally use foot pedals, stoop, crouch, crawl, kneel, balance, and climb ramps or stairs (but never ladders, ropes, or scaffolds). (Tr. 14). In other words, he essentially found her capable of sedentary work. *See Titles II and XVI: Determining Capability to Do Other Work--implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work*, SSR 96-9p (SSA July 2, 1996).

Plaintiff contends that the ALJ's RFC is flawed because he erred in his credibility determination, and because more recent evidence compels a different result.

### a) Credibility

When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4).

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

However, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ determined that plaintiff's medically determinable impairments reasonably could be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were not consistent with the assigned RFC. (Tr. 15). The ALJ then noted that despite complaints of severe pain, Hall did not take any prescription pain medication. *Id*. Rather, she solely took Tylenol or Ibuprofen, as needed. (Tr. 15).

Plaintiff contends that the ALJ's reasoning is faulty because on June 14, 2010, at her last orthopedic appointment before the November 1 hearing, she asked her physician for pain medication, but her physician denied her request. *See* Tr. 211-212. However, her physician's decision to *not* prescribe pain medication, and related instruction to decrease Tylenol usage reasonably may be construed as the physician's refusal to credit Plaintiff's complaints of severe pain. Indeed, during the June 14, 2010, visit, Plaintiff complained to her physician that she suffered sharp, shooting right ankle pain. (Tr. 211-212). Nevertheless, upon examination, the physician noted that the wound from her ankle surgery had completely healed. *Id*. X-rays showed that the fracture itself was healing, and that anatomical alignment was maintained. *Id*. The physician noted that Plaintiff became quite disgruntled when she was refused pain medication, and abandoned the clinic without scheduling her six month followup. *Id*.

Furthermore, Plaintiff testified at the hearing that on a ten point scale, with a ten requiring a trip to the emergency room, her leg pain averaged a ten, but ranged in severity from a seven to ten. (Tr. 36-37). The administrative record, however, remains devoid of any emergency room visits for pain. Also, during the relevant period, there is no record of any attempts to obtain

treatment or relief for this purportedly debilitating pain. Moreover, nurses' notes from Plaintiff's myriad clinic visits during her post-surgery convalescence (late February to June 2010), all but uniformly document that Plaintiff had no complaints of pain. (Tr. 173, 179, 182, 187, 192).

The court further observes that at the November 2010 hearing, Plaintiff testified that because of her impairment, her three year old son's father had to take care of him and handle most of the child care duties. (Tr. 38). However, in a Disability Function Report that Hall completed in June 2010, she wrote that she did "everything" for her then two year old son, including feeding, clothing, and bathing him. (Tr. 152). She further indicated that she took care of her son from the time that she woke up until she went to bed. *Id*.

In short, not only does the ALJ's proffered rationale support his decision to no more than partially credit Plaintiff's complaints and testimony, but his credibility determination is further supported by inconsistencies with Plaintiff's self-described limitations.[3] Thus, the ALJ's discussion met the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See, Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave

---

[3] Contrary to Plaintiff's argument, the opinion of the non-examining agency physician, Hollis Rogers, M.D., generally supports the ALJ's determination. Dr. Rogers opined that Plaintiff's impairment was not severe enough to prevent her from engaging in substantially gainful activity for the requisite twelve month threshold period. (Tr. 221). While the ALJ agreed that Plaintiff's impairment did not prevent her from engaging in substantially gainful activity, he parted company with Rogers when he determined that Plaintiff's impairment would cause her work-related limitations of functioning even after twelve months. *See* Tr. 16.

"greatest weight" to treating physician's opinion).

      b)      <u>Evidence Presented to the Appeals Council and to the Court</u>

Plaintiff next contends that more recent medical records support her self-professed limitations of functioning. The evidence includes a July 21, 2011, outpatient office visit with Dr. Marymont that she transmitted to the Appeals Council [doc. # 224], and a To Whom it May Concern letter dated April 12, 2012, from Dr. Marymont that she attached to her appeal brief [doc. # 7-1].

The July 21, 2011, office note documents that Plaintiff continued to have chronic, "debilitating" right ankle pain with stiff ankle, worse with prolonged standing, relieved with rest. (Tr. 224). Dr. Marymont observed that the fracture had healed, but that the joint space appeared to have undergone some post-traumatic changes. *Id*. He diagnosed post-traumatic arthritis, and opined that her arthritic pain was likely to worsen. *Id*. He intended to follow her on an as-needed basis. *Id*.

In his April 12, 2012, letter, Dr. Marymont clarified his July 21, 2011, statement that Plaintiff had "chronic debilitating ankle pain." *Id*. He explained that Hall was unable to stand for more than ten to fifteen minutes at a time for a total of no more than two to three hours in an eight hour day. [doc. # 7-1]. He concluded that because her prior work required standing and walking, he did not believe that she could return to her previous employment. *Id*.

The evidence that Plaintiff sent to the Appeals Council constitutes part of the instant record – so long as it is new, material and related to the period before the ALJ's decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[4] As for Dr.

---

[4] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d

Marymont's April 12, 2012, letter, this court's review of the Commissioner's final decision is "limited to considering whether the decision is supported by substantial evidence *in the record . . .*" *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005) (emphasis added).  Thus, at best, this court could remand the matter to the Commissioner for consideration of plaintiff's recently adduced evidence.  Before new evidence will warrant remand, however, plaintiff must demonstrate that it is new, material, *and* that she had good cause for his failure to incorporate such evidence into the record of the prior proceeding.  *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)).

       The court is not persuaded that either the July 21, 2011, outpatient office visit or the April 12, 2012, follow-up letter meet the criteria to warrant reversal and/or remand.  The evidence is not material, *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination.  *Pierre, supra*.  By itself, Dr. Marymont's July 21, 2011, statement that Hall suffered "debilitating"or disabling pain is not accorded any special significance under the regulations.  *See* 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).  Insofar as Dr. Marymont's April 12, 2012, letter endeavored to shore up his July 21, 2011, impression by identifying specific limitations, the court observes that the standing limitations assigned by Dr. Marymont are entirely consistent with the exertional demands of sedentary work and with the jobs identified by the vocational expert.  *See* Tr. 52-53; SSR 96-9p.[5]

---

Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)).  Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period.  *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

    [5] The court recognizes that Dr. Marymont's standing restriction is more limited than the ALJ's finding that she was capable of standing/walking for four hours during the workday.  However, when, as here, the Commissioner determines that a claimant can perform light work, she also *per se* determines that the claimant can perform sedentary work.  20 C.F.R. §§

Indeed, what is telling from Dr. Marymont's letter, is that he did not include any limitation on Hall's ability to sit, or indicate that she required frequent breaks to elevate her leg.[6]

Consistent with the ALJ's decision, Marymont concluded that he did not think that Hall could return to her prior employment because of the standing and walking requirements of those jobs. Also in accordance with the ALJ's decision, Marymont did not restrict Hall from performing other work at the sedentary level.

In sum, the new evidence does not provide grounds for reversing or remanding the Commissioner's decision. Instead, it buttresses the Commissioner's decision, and confirms that the ALJ's RFC is supported by substantial evidence.

## III.    Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Hall was unable to perform her past relevant work. (Tr. 16). Accordingly, he proceeded to step five. At this step, the ALJ determined that Hall was a younger individual, with a limited education, and that

---

404.1567(b), 416.967(b). Moreover, at the hearing in this case, the vocational expert testified that a standing and walking limitation of only four hours per day would preclude light work and reduce the hypothetical claimant to sedentary work. (Tr. 49). Thus, the jobs identified by the vocational expert, and thereafter relied upon by the ALJ in his step five determination, contemplated work at the sedentary exertional level, which, by definition, includes the restrictions identified by Dr. Marymont. As a result, any error by the ALJ was harmless.

"Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

[6] Although Plaintiff complained at the hearing that she could not sit for more than 30 minutes at a time before needing to lie down and elevate her leg (Tr. 33), she herself failed to disclose any such sitting restriction(s) when she completed her disability questionnaire in June 2010. (Tr. 156).

transferability of skills was immaterial. *Id*. He observed that given Hall's vocational factors, and if she were capable of the full range of light work, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 202.18, Table 2, Appendix 2, Subpart P, Regulations No. 4. (Tr. 16-17).[7] However, because Hall's residual functional capacity did not permit her to perform the full range of light work, the ALJ consulted a vocational expert ("VE") to determine the extent that her additional limitations eroded the occupational base for unskilled light work. In response, the VE identified the representative jobs of final assembler, *Dictionary of Occupational Titles* ("DOT") Code # 713.687-018 and table worker, DOT Code # 739.687-182 that were consistent with the ALJ's RFC (effectively work at the sedentary exertional level) and Hall's vocational profile.[8]

Plaintiff contends that the ALJ's step five conclusion is flawed because the VE testified that if Hall had to lie down and elevate her leg outside of normal work breaks or if she had to miss more than two days of work per month, then there would be no jobs that she could perform. However, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the hypotheticals that the ALJ posed to the VE faithfully incorporated all of the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.

---

[7] The same result obtains under Rules 202.17, 201.18 and 201.19.

[8] The VE testified that together, there were 81,000 such jobs in the national economy and 5,850 jobs in Texas and Louisiana. (Tr. 17, 49-50). This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

**Conclusion**

The Commissioner in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered all of the record evidence. Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. That exception is present here.[9] Although the Commissioner's decision is not blemish-free, procedural perfection in the administrative process is not required, and the alleged errors do not undermine the court's confidence in the ultimate decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Hall is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or

---

[9] Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster v. Astrue*, 2011 WL 480036 (5th Cir. Feb. 10, 2011) (unpubl.); *Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 20th day of June 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE